UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 20-20556 |
| v. | |
| | Hon. Paul D. Borman |
| MICHAEL BISCHOFF, | |
| Defendant. | |

_____/

GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The "Paycheck Protection Program" (PPP) is a program administered by the Small Business Administration (SBA) and designed to help employers keep workers on the payroll during the economic downturn brought about by the COVID-19 pandemic. In the early days of the crisis, Michael Bischoff (Bischoff) illegally applied for at least nine PPP loans, totaling $931,772.00, on behalf of his companies from several banks participating in the program. The funds for five of the nine PPP loans, totaling $593,590.00, were disbursed to Bischoff. Additionally, in eight of the nine PPP loan applications, Bischoff submitted false and fraudulent Internal Revenue Service (IRS) Forms W-3 to secure approval of the loans. Furthermore, in six of the nine PPP loan applications, Bischoff fraudulently used another person's personal identifying

1

information to secure approval of the loans. Bischoff's criminal conduct was both brazen and serious. The PPP program has served as a critical source of support for struggling businesses during an unprecedented global crisis. Fraud of this sort imposes real costs on lenders and the government and undermines public confidence in the integrity of the program. The United States recommends the court impose a sentence of 41 months imprisonment, which is at the bottom of the advisory guideline range calculated by the probation department for this offender.

## FACTUAL AND PROCEDURAL BACKGROUND

Enacted on March 27, 2020, as a part of the Coronavirus Aid, Relief, and Economic Security (CARES) Act, the PPP is designed to provide a direct incentive for small businesses to keep their workers on the payroll during the pandemic. The PPP enables businesses to obtain forgivable loans from participating financial institutions. The SBA will forgive the loans if all employees are kept on the payroll for a certain period of time and the proceeds of the loans are used for payroll, rent, mortgage interest, or utilities. PPP funds were designed as a lifeline.

The program was designed to provide funds quickly and easily to qualifying individuals.  PPP loans were not dispensed through any government bureaucracy; funds were distributed by banks who often had existing relationships with many of the people in need.  To apply for a PPP loan, individuals submitted an application to a participating financial institution along with supporting documentation as to the business's payroll expenses.  The supporting documentation requirement was minimal and could be satisfied with one year's worth of company tax records.  If a PPP loan application was approved, the participating financial institution funded the PPP loan using its own monies, which were 100% guaranteed by the SBA.

Bischoff was the self-reported owner and/or registered agent of Little Dino's Pizza Express, Inc. (doing business as Little Dino's Pizza), Passport Pizza, Motor City Pizza, Group 1 Enterprises Inc., Marvel Media LLC, D-Brands Inc., MJR Financial Group LTD, MJR Food Group Inc., and Group MJR Inc. (collectively, the

"Bischoff Entities"), which are asserted to be registered in the State of Michigan and located in Macomb County within the Eastern District of Michigan

Between approximately June 4, 2020, and August 2, 2020, Bischoff submitted at least nine false and fraudulent PPP loan applications, totaling $931,772, on behalf of the Bischoff Entities (collectively, the "PPP Loans").  The PPP Loans are listed in the following table by loan date, the funding financial institution or processing company and loan amount.

| No. | Loan Date | Funding Financial Institution or Processor | Loan Amount |
|---|---|---|---|
| 1 | June 4, 2020 | Lender A | $50,000 |
| 2 | June 6, 2020 | Bank B | $134,165.00 |
| 3 | June 18, 2020 | Bank A | $90,410.00 |
| 4 | June 19, 2020 | Bank A | $112,470.00 |
| 5 | June 20, 2020 | Bank A | $119,791.00 |
| 6 | June 24, 2020 | Bank A | $136,654.00 |
| 7 | July 15, 2020 | Bank Processor A | $75,436.00 |
| 8 | July 24, 2020 | Bank Processor A | $89,477.00 |
| 9 | August 2, 2020 | Bank Processor A | $123,369.00 |

Banks A and B are insured by the Federal Deposit Insurance Corporation, while Lender A is a nonbank small business investment lender.

In each of the applications for the PPP Loans, Bischoff falsely represented the amount of payroll and the number of employees working for the Bischoff Entities. To secure approval of eight of the PPP Loans, Bischoff submitted false and fraudulent Internal Revenue Service (IRS) Forms W-3. In addition, to secure

approval for six of the PPP Loans, Bischoff fraudulently used another person's personal identifying information. Bischoff also wrongly certified that the funds obtained through the PPP Loans would be used for qualified expenses. Bischoff submitted these false statements in his applications as part of a scheme to defraud the lending banks and the PPP, and he did so with the intent to defraud. As a result of Bischoff's fraud, the funding financial institutions or processing company for the PPP Loans paid five of the loans to accounts controlled by Bischoff.

Bischoff was charged via an information on November 12, 2020, charging Bischoff with one count of bank fraud in violation of 18 U.S.C. § 1344(2). Bischoff entered a plea to the offense on November 23, 2020, pursuant to a Rule 11 Plea Agreement.

## GUIDELINE CALCULATION

Per the plea agreement in this case, the parties agree that defendant Bischoff should receive a three-point reduction for Acceptance of Responsibility pursuant to Section 3E1.1 of the United States Sentencing Guidelines (USSG). The probation department calculated a Guideline range of 41 months to 51 months, based on a Total Offense Level of 20 and a total of six criminal history points, which yields a Criminal History Category of III. The government agrees with that calculation. With a Base Offense Level of 20 and a Criminal History Category of III, his properly calculated guideline range is 41-51 months imprisonment.

Bischoff does not object to the calculation of his Base Offense Level of 20. However, he does dispute the calculation of criminal history points. He first argues that he should not be assessed three points pursuant to USSG § 4A1.1 for his 1997 conviction by jury for conspiracy to commit wire fraud and bank fraud, wire fraud, and bank fraud, because "the conviction for that offense (08/28/1997) was not more than 15 years before (June to August 2020 and August 5, 2004)." PSR at A-2.

However, as the probation department correctly responded, pursuant to USSG §4A1.2(k)(2)(A), Bischoff was last released from his sentence within the past 15 years. PSR at A-2. For the purpose of determining the applicable time period, in the case of an adult term of imprisonment totaling more than one year and one month, the date of last release from incarceration on such sentence is used. Bischoff was sentenced on August 28, 1997 to 30 months custody and was released from custody to supervised release on June 18, 1999. Yet on August 5, 2004, Bischoff was returned to custody for 24 months due to a violation of supervised release. Because Bischoff was not released from custody until June 27, 2006, which is within the applicable 15-year time period, the probation department accurately assessed three points for his 1997 fraud conviction.

Bischoff next claims that he should not be assessed three levels pursuant to USSG § 4A1.1(a) for his 2004 conviction of false statement on a bank credit application "because it involves double convicting." PSR at A-2. In the alternative,

6

Bischoff "suggests the process of inclusion for the supervised release violation and the instant offense results in double counting." *Id.*

Bischoff is incorrect for the reasons the probation department explains in the PSR. *See* PSR at A-2-3. On September 27, 2004, Bischoff was sentenced to 18 months custody. This charge was a violation of supervised release under docket number 95CR80889. However, the revocation alone did not apply to multiple/similar sentencing dates. Therefore, these sentences are separate in that the offenses were separated by intervening arrests and the sentences were not imposed on the same date. Thus, the probation department did not improperly double count Bischoff's convictions. Additionally, Bischoff was designated to Morgantown FCI on October 1, 2004 and transferred to a residential reentry center (RRC) on December 30, 2005, which is within the applicable 15-year time period.

## SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

Section 3553(a) of the United States Code sets forth a number of factors for the Court to consider in imposing sentence. These factors include the nature and circumstances of the offense, the history and characteristics of the offender, considerations of both specific and general deterrence, and the need to provide just punishment for the offense and promote respect for the rule of law. The government respectfully submits the following observations on those factors and their applicability to the conduct and defendant in the instant case.

The nature and circumstances of the offenses here are quite serious. The defendant's fraud was blatant, egregious, and involved a substantial amount of money. Moreover, Bischoff's crimes were calculated ones, and were hardly the product of a momentary lapse in judgment. Bischoff repeatedly submitted multiple applications for PPP loans despite knowing that he was not eligible for them. He proceeded to fill out <u>nine</u> applications for forgivable loans in the total amount of $931,772.00, falsely representing the number of individuals these businesses employed and the monthly payroll they incurred, and he submitted false documents to support his applications. There is no ambiguity concerning these representations – they were flagrant lies. Such repeated false and fraudulent conduct reflects Bischoff's calculated willingness to lie for money, his greed, and his complete lack of concern about defrauding a program designed to help struggling small businesses during a national crisis. Bischoff's crimes were significant ones.

The history and characteristics of the defendant present a picture of a recidivist criminal who continually deceives others for his own financial gain. The PSR reflects the defendant's fairly stable home life, and how Bischoff has worked for decades in the pizza franchise industry but has repeatedly used his pizza businesses to further his criminal schemes.

The defendant's criminal history is troubling. He was convicted at trial in 1997 of conspiracy to commit wire fraud and bank fraud, 12 counts of wire fraud, and six counts of bank fraud in the Eastern District of Michigan. PSR ¶ 32. The defendant

and his then-wife engaged in a kiting scheme, which involved hundreds of fraudulent wire transfers worth $20 million related to their chain of pizza franchises under the name Pizza One. Bischoff was sentenced to 30 months imprisonment, five years supervised release, and ordered to pay $668,104 in restitution. *Id.* While on supervised release, Bischoff engaged in another fraud scheme in 2002 that involved mortgage and automobile loans. *Id.*

In 2004, Bischoff was charged with three counts of false statements in a credit application. PSR ¶ 33. As the PSR describes, the defendant obtained a series of credit lines based on false information regarding his employment and income. *Id.* He defrauded the credit card companies between 1999 and 2003 by making charges through the merchant accounts at three Pizza N' More franchises he owned with his wife. In 2004, the defendant pleaded guilty to one count of false statements in a credit application. He was sentenced to 18 months imprisonment, five years supervised release, and then sentenced to an additional 24 months imprisonment for violating the terms of his supervised release on his 1997 conviction. *Id.*

There is a clear pattern here. Bischoff defrauds others through false representations in order to obtain funds to which he is not qualified. And he frequently exploits his various pizza chain businesses to defraud others and enrich himself.

Importantly, and to his credit, Bischoff has already paid full restitution in the instant case. Within seven business days of signing the plea agreement, Bischoff

9

made a payment of $593,590.00 to the Clerk of the Court. PSR ¶ 60. This stands in contrast to his prior convictions, in which he failed to pay full restitution, and was reported to have purposely failed to accurately report his finances in an attempt to avoid payment of restitution. PSR ¶ 32.

With respect to deterrence, the government submits that there is significant need for both specific deterrence and general deterrence with respect to this offense and this offender. As noted above, the instant case is the fourth different fraudulent scheme that Bischoff has participated in, and the substantial sentences he received on his prior convictions failed to deter his misconduct in this case. A sentence involving a reasonable period of incarceration would hopefully dissuade Bischoff from engaging in any such fraud in the future.

Additionally, general deterrence is a relevant consideration in imposing a sentence in this matter. Fraud in the PPP is a serious problem in both this district and nationally. The SBA Office of Inspector General recently conducted an analysis that identified some $4.6 billion in potentially fraudulent PPP loans. Few defendants have been sentenced in this district for PPP fraud, and a sentence in line with the government's recommendation would send the laudable message that this sort of fraud is taken seriously by the courts and will yield significant penal consequences.

Finally, the government submits that a sentence of 41 months would provide just punishment for the offense and promote respect of the rule of law. The PPP has been a critical lifeline for a number of small businesses during an unprecedented

national crisis. Fraud on this program obviously harms lenders and may affect their willingness to participate in the program; additionally, it undermines public confidence in the viability of such programs and the ability of public programs to assist those in need. A defendant willing to take advantage of a program designed and intended to help keep our economy afloat during a pandemic is richly deserving of a serious punishment. A sentence of 41 months of incarceration would provide the defendant with an appropriately significant penalty and would promote respect for the law in this jurisdiction and nationally.

In conclusion, the government respectfully maintains that a sentence of 41 months would appropriately balance the relevant statutory factors at issue in this sentencing. Such a sentence would also adequately account for the seriousness of the offense, promote respect for the law, and deter both Bischoff and others from engaging in similar criminal conduct. The government therefore recommends a sentence be imposed at this level.

SAIMA SHAFIQ MOHSIN
Acting United States Attorney
Eastern District of Michigan

JOSEPH BEEMSTERBOER
Acting Chief
Fraud Section, Criminal Division
United States Department of Justice


*/s/John K. Neal*
JOHN K. NEAL
Chief, White Collar Crime Unit
Assistant United States Attorney
Eastern District of Michigan

*/s/ Philip B. Trout*
PHILIP B. TROUT
Trial Attorney

DEBORAH L. CONNOR
Chief
Money Laundering and Asset Recovery
Section, Criminal Division
United States Department of Justice


*/s/ Chad Davis*
CHAD DAVIS
Trial Attorney