# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,                        CASE NO. 20-CR-20556

vs.                                    HON. PAUL D. BORMAN

MICHAEL BISCHOFF,

          Defendant.

_____/

## DEFENDANT'S SENTENCING MEMORANDUM

NOW COMES the Defendant, MICHAEL BISCHOFF, by and through his counsel, James C. Thomas, of JAMES C. THOMAS, P.C., and files the following Sentencing Memorandum setting forth all factors that this Honorable Court should consider in determining the type and length of sentence for Michael Bischoff (hereinafter referred to as "Mr. Bischoff") and our request for a downward variance from the sentencing guidelines.

## I. COMPUTATION OF GUIDELINES

On November 23, 2020, Mr. Bischoff, waived is right to an indictment and plead guilty to Count 1 of the Information pursuant to a Rule 11 Plea Agreement, which charges him with Bank Fraud under 18 U.S.C. § 1344(2). The Court accepted Mr. Bischoff's plea and the Rule 11 was taken under advisement. Mr. Bischoff has

embraced his culpability in the above-entitled matter and should get full credit for his timely acceptance of responsibility.

The parties agree to the truthfulness of the facts set forth in Mr. Bischoff's Plea Agreement, and they accurately describe his role in the offense which occurred in approximately June, 2020 and continued through approximately August, 2020.

The guidelines for violation of 18 USC § 1344(2) are found in USSG § 2B1.1(b)(11)(c)(1)(B) requiring a base offense level of seven (7). Mr. Bischoff received a fourteen-level (14) increase pursuant to USSG § 2B1.1(b)(1)(H), because the intended loss in this offense was calculated in excess of $550,000.00, but less than $1,500,000.00. Additionally, he received a two-level (2) increase pursuant to USSG § 2B1.1(b)(9)(c) because the offense involved sophisticated means.

Finally, Mr. Bischoff received a three-level (3) total reduction for acceptance of responsibility pursuant to USSG §§ 3E1.1(a) and (b). As a result, Mr. Bischoff's Total Offense Level is 20. Based upon a criminal history score of six (6), Mr. Bischoff has a criminal history category of III, and his advisory guidelines range is calculated to be 41 to 51 months. There are no disputes regarding the calculation of the guidelines range in the Rule 11 Plea Agreement or in the report by Probation.

## II. RULE 11 PLEA AGREEMENT

On November 23, 2020, Mr. Bischoff entered a plea of guilty pursuant to a Rule 11 Plea Agreement to Count I as charged. Mr. Bischoff agreed to pay the

agreed upon restitution amount at the time of his Plea ($593,590.00), and he did so in full. Towards that end, it is believed the Government has conceded there will be neither forfeiture nor restitution.

## III. REQUEST FOR DOWNWARD VARIANCE FROM ADVISORY GUIDELINES

Until 2005, a defendant was precluded from arguing a variance outside the express terms of a Rule 11 Plea Agreement. United States v. Williams, 510 F.3d 416, 435 (3rd. Cir. 2007). That is not true today since the decision in Booker and Fanfan. Upon review of the United States Sentencing Guidelines Commission statistics since those decisions, both nationally and for the Eastern District of Michigan, it appears as if judges have been more willing to exercise their discretion and vary from the guidelines to impose a sentence below the recommended guidelines. We ask this Honorable Court to do so here.

18 USC § 3553(a) requires a sentencing judge to impose a sentence sufficient but not greater than necessary to comply with the purposes of paragraph (2) of this subsection. As this Court well knows, variances from the sentencing guidelines have become commonplace since the Supreme Court's decision in Booker and Fanfan. In addition to rendering the guidelines advisory rather than mandatory, the Court has also held that a district court may consider arguments that "the Guidelines sentence itself fails properly to reflect §3553(a) considerations." Rita v United States, 551 US 338 (2007). A district court may also vary from guideline ranges based solely

on policy considerations, including disagreements with the guidelines. Kimbrough v United States, 552 US 85 (2007). In these decisions, the Supreme Court has approved the notion that the sentencing judge "has greater familiarity with an individual case and individual defendant than the Commission or the appeals court and is therefore in a superior position to find facts and judge their import under §3353(a) in each particular case." Kimbrough, supra, at 574.

Counsel submits that a lengthy term of incarceration under the particular facts and circumstances of this case is greater than necessary to achieve the stated goals of sentencing. In 2003 Justice Anthony Kennedy stated, "Our resources are misspent, our punishments too severe; our sentences too long . . . the sentencing guidelines are responsible in part for the increased terms [and they] should be revised downward."[1] Ten years later, United States Attorney General Eric Holder echoed Justice Kennedy in his own speech to the ABA, saying "too many Americans go to too many prisons for far too long, and for no truly good law enforcement reason..."[2]

Counsel attended a sentencing at WSU Law School where the question was posed to the Honorable Jed Rakoff (EDNY) and the Honorable Nancy Edmunds (EDM) "How Much Time was Too Much Time?" This issue is ever-looming. Prison populations continue to be burdened by sentences too long for their purposes.

---

[1] http://www.abanow.org/2003/08/speech-by-justice-anthony-kennedy-at-aba-annual-meeting/
[2] http://www.justice.gov/iso/opa/ag/speeches/2013/ag-speech-130812.html

Recognizing the purposes of sentencing are restriction, deterrence, incapacitation and rehabilitation, as stated in U.S. v. Pressley, 547 F.3rd. (6th Cir 2008). Counsel submits Mr. Bischoff's circumstance is one that warrants the serious consideration of this Honorable Court. Counsel requests that this Honorable Court grant a variance for the reasons stated below after application of the relevant sentencing factors. See Gall v United States, 552 US 38 (2007), U.S. v Hawkins, 59 F.3d 1312 (8th Cir 2008).

## IV. APPLICATION OF THE 18 U.S.C. § 3553(a) FACTORS

### 18 USC § 3553(a)(1): Nature and Circumstances of the Offense and Michael Bischoff's History and Characteristics

#### A. Age of the Defendant

Mr. Bischoff will be 62 years old in April, 2022. Although the age of the Defendant was not normally relevant under the old sentencing guidelines, it may be considered under §3553(a). United States v Carter, 538 F 3d 784 (7th Cir. 2008) (24-month sentence upheld for a 61-year old defendant where guidelines were 87-108 months based in part on the fact that the defendant's age posed a lower risk of recidivism); see also United States v Chase, 560 F 3d 828 (8th Cir. 2009) (Defendant's age, health, and employment history supported a downward variance) and United States v Smith, 06-4885 (4th Cir. 2008) (24-month sentence upheld for a

64-year old defendant where guidelines were 78-97 months based upon his age and

the fact that it was his first encounter with the law.) 3

The Sixth Circuit has also discussed the relevance of age in sentencing

decisions. In United States v Davis, 458 F3d 491 (6th Cir. 2006), the Court concluded

that while age is a forbidden factor under the sentencing guidelines when it comes

to granting departures from the guideline range, it is an appropriate factor to consider

when granting a variance:

> [When] it comes to the §3553(a) factors ... age, the second
> reason for the district court's variance, may indeed be a
> legitimate basis for a variance.

The Court then went on to discuss a trial judge's authority to grant a variance:

> But a trial judge's authority to exercise independent judgment
> in granting a variance after applying the §3553(a) factors differs
> from his authority to grant departures.
>
> ********
>
> §3553(a)(1) directs a sentencing court to consider the "history and
> characteristics of the defendant." In an appropriate case, a trial court,
> in exercising the "broad discretion" that Booker gives it "in imposing a
> sentence within a statutory range," 543 U.S. at 233, has a freer hand to
> account for the defendant's age in its sentencing calculus under §3553(a)
> than it had before Booker. See United States v. Smith, 445 F3d 1, 5
> (1st Cir. 2006) (holding that district court's consideration at sentencing
> of defendant's age was not inappropriate and noting that even though "a
> factor is discouraged or forbidden under the guidelines," that "does not
> automatically make [the factor] irrelevant when a court is weighing
> the statutory factors apart from the guidelines"); cf. United States v.
> Moreland, 437 F.3d 424, 436 n.8 (4th Cir. 2006).

---

3 The Smith case was an unpublished opinion.

In <u>United States v Payton</u>, #13-1232 (6th Cir. June 12, 2014), the Court found that older offenders pose so low a risk to the public that long or otherwise harsh sentences have little or no utilitarian benefit, stating that …. "only one percent of elderly offenders ever face a subsequent conviction.[4]

### B. Family Circumstances

Mr. Bischoff is recently divorced and a father of three children. He was married for 35 years. He has maintained a close relationship with his children in spite of marital differences. Mr. Bischoff was raised by his parents. His mother, who is now 82 years old, is disabled from a recent broken hip and knee, and Mr. Bischoff cares for her 7 days a week. He has two siblings, both living out of state. Mr. Bischoff has a high school education, and his self-employment history exceeds 20 years.

The letters submitted in support of Mr. Bischoff (letters are included as an exhibit/attachment to this Memo) show that he is a good person and father and that he enjoys the respect of his children, and of his employees, friends, and neighbors. The individuals in the attached letters all recognize that Mr. Bischoff has committed a serious crime; however, they still support him and ask for leniency (see attached letters from Thomas Scott and James Bishai). Counsel submits that Mr. Bischoff is

---

4 See also <u>United States v Duane</u>, 533 F3d 441 (6th Cir. 2008), where the Court also noted that first-time fraud offenders with no criminal history have the lowest rate of recidivism.

supported emotionally and, in an unwavering way rarely seen in this lawyer's experience, these letters are outstanding in their sincerity and beliefs. Mr. Bischoff has been devoted to his family and has emphasized the importance of his children's education. He has been involved in charitable good works with St. Anthony's Church and the Harvest Time Ministry (local food pantry). He is willing to help others less fortunate than himself working with Gateway to Glory and Deacon Albert Thrower and employing ex-offenders. His civic participation is noted by John Johnson of the SE Michigan Chamber of Commerce. It shows in the letter attached by Steven Malek, Albert Thrower, and Charles T. Missig.

### C. Extraordinary Effort to Pay Restitution.

Mr. Bischoff is self-employed and the sole owner of Passport Pizza. When the Covid-19 pandemic hit, he was already in the middle of a difficult divorce proceeding. He was barely able to make ends meet and continue to employ his staff. On the negative side, quite simply, he cheated. He lied and got someone else to do it with him. Mr. Bischoff obtained money that he was not entitled to. Interestingly, he did not spend it for the most part. Frozen in the middle of a divorce proceeding and receivership that bled the company dry, Mr. Bischoff did not act as expected on his fraud. As a result, money from the several PPP loans was available, and Mr. Bischoff promptly repaid the government in full. 5

---

5 It is acknowledged that the guidelines for "intended fraud" under USSG § 2B1.1(6)(c) for 9 loans was $932,722. Mr. Bischoff however actually received the lesser amount of $590,590.00.

Where restitution efforts exceed the usual or typical, they may provide a basis for a departure or variance from the sentencing guidelines.  United States v Hairston, 96 F3d 102 (4th Cir. 1996); United States v Oligmueller, 198 F3d 669 (8th Cir. 1999); United States v Kim, 364 F3d 1235 (11th Cir. 2004).

The Sixth Circuit has also approved the consideration by a district court of extraordinary efforts by a defendant to pay restitution.  United States v DeMonte, 25 F3d 343, 346-47 (6th Cir. 1994).  In these cases, the Court has emphasized that voluntary payments by a defendant, where it was done here, **before** an adjudication of guilt deserve special consideration.  In DeMonte, for instance, the Court held that a defendant's voluntary restitution payments before an adjudication of guilt may justify a downward departure.  The DeMonte panel quoted from United States v. Garlich, 951 F2d 161, 163 (8th Cir. 1991) as follows:

> A defendant's voluntary payment of restitution before adjudication
> of guilt is a factor to be considered in determining whether the
> defendant qualifies for a two-level reduction for acceptance of
> responsibility . . . . Although the district court gave [the defendant]
> this reduction, we conclude the district court should consider whether
> the extent and timing of [the defendant's] restitution is sufficiently
> unusual to warrant a downward departure.

Both of these cases were decided before Booker and Fanfan where courts were considering downward departures only and not variances.  Now, they are even more compelling since the Sixth Circuit has made it clear that a trial judge's authority to

grant a variance after applying the § 3553(a) factors is different from his authority to grant departures.  United States v Davis, supra.

In the instant case, there is no question that Mr. Bischoff has not only made extraordinary efforts to pay restitution, but also did so long before there was any adjudication of guilty.  Mr. Bischoff made the type of extraordinary effort to pay restitution that is referenced by the case law.  In addition to the restitution already paid, 18 USC §35539a)(7) requires the Court to consider "the need to provide restitution to any victims of the offense" in fashioning its sentence.  If a guidelines sentence is imposed, Mr. Bischoff will be almost 70 years old at the time of his release and, in all likelihood, unable to find meaningful employment that will allow him to pay additional restitution.  A lesser sentence will give him a much better chance of meeting the goal of §3553(a)(7).

Therefore, for all of the reasons set forth above, the Court should consider Mr. Bischoff's extraordinary efforts to pay restitution, particularly when his payments were made before the entry of his guilty plea, in granting a significant variance from the guideline range.

Mr. Bischoff has not only faced the possibility of prosecution and the uncertainty of sentencing, but he also must face his community who now have become fully aware of his fraudulent conduct.   Mr. Bischoff is shamed by this and because of his shame, he has shielded many family members and friends from the

instant matter for a long period.  As are reflected by his letters of support, he has made his family aware.  It is well known that a felony conviction wreaks havoc on a person's life.  <u>United States v. Wulff</u>, 758 F.2d 1121, 1125 (6th Cir. 1985) ("a felony conviction irreparably damages one's reputation.")  See generally <u>United States v. Leon</u>, 341 F.3d 928, 929 (9th Cir. 2003); <u>United States v. Aguirre</u>, 214 F.3d 1122, 1123 (9th Cir. 2000).

The support of Mr. Bischoff's family and friends should be considered by this Honorable Court, since evidence suggests familial support is a significant factor in lower recidivism.  See Shirley R. Klein *et. al., Inmate Family Functioning*, 46 Int'l J. Offender Therapy & Comp. Criminology 95, 99-100 (2002) ("The relationship between family ties and lower recidivism has been consistent across study populations, different periods, and different methodological procedures.")  He is a man who gives of himself.  In addition, he regularly contributes the local food pantry.  Mr. Bischoff is also a proud member of the National Restaurant Association.  He regularly gives contributions to their educational fund which provides scholarships to restaurant employees nationwide.

The Court may consider Mr. Bischoff's character, as reflected in the letters by those who know him and his charitable good works.  See <u>Unites States v. Wachowiak,</u> 412 F.Supp.2d 958 (E.D. Wisc. 2006) *aff'd* 496 F.3d 744 (7th Cir. 2007) ("The guidelines failed to consider defendant's otherwise outstanding character, as

depicted in the many supportive letters... while essentially § 3553(a)(1) requires the court to consider the character of the defendant, the guidelines account only for criminal history.

## 18 USC § 3553(a)(2)(A): The Requirement that the Sentence Imposed Reflect the Seriousness of the Offense, Promote Respect for the Law and Provide Just Punishment for the Offense

Mr. Bischoff is fully aware that this is a serious crime, and he must face the consequences of his actions. He recognizes the need to focus on making amends to all that he has hurt; God, family, friends, and employees. He very early on recognized his wrongdoing and agreed to plead to an Information rather than wait for an Indictment. This was not as a result of any cooperation on his part. It was frank realization of his own culpability without any thought of defending it.

The collateral consequences of Mr. Bischoff's conduct, and resulting guilty plea, to a large extent reflect the seriousness of the offense and provide punishment. He has been under investigation for approximately a year and a half. He has consented to what amounts to him to be significant restitution in this case. He now faces a loss of freedom with isolation from family, equally his widowed mother, who need him. He faces uncertainty with his business while being incarcerated.

## 18 USC § 3553(a)(2)(B): Deter Criminal Conduct

It is proper for a sentencing court to vary from the guidelines based upon evidence of a substantial likelihood that a defendant will successfully overcome the

cause of the criminal behavior being punished. See <u>United States v. Davis</u>, 763 F.Supp. 645, 652 (D.C. Cir. 1991). Since this offense, Mr. Bischoff has gained a very real understanding of the jeopardy he has placed himself under, at this late age and with a litany of medical issues still facing him.

## 18 USC § 3553(a)(2)(C): Protect the Public From Further Crimes of the Defendant

Post <u>Booker</u> and <u>Fanfan</u> cases have reiterated that incarceration is not always necessary to protect the public. See <u>United States v. Edwards</u>, 595 F.3d 1004 (9th Cir. 2010); <u>Unite States v. Baker</u>, 502 F.3d 465 (6th Cir. 2007); <u>Unites States v. Stall</u>, 581 F.3d 276 (6th Cir. 2009) (where variances that did not provide for incarceration were held not to be unreasonable).

Counsel submits that lengthy incarceration is not necessary to protect the public from Mr. Bischoff. There is an additional argument that must be made here. At this point, counsel might recommend halfway house placement, but that placement puts a very heavy tax on any income that the Defendant will be generating. If the Court accepts Defendant's acceptance of responsibility, extraordinary restitution, his shame and the disappointment to his family, it will have to balance that against the need to specifically or generally deter the Defendant's conduct. Hopefully, the Court would extend the quality of mercy under the exceptional circumstances presented here.

**18 USC § 3553(a)(2)(D): Provide the Defendant with Needed Educational or Vocational Training, Medical Care or Other Correctional Treatment in the Most Effective Manner**

Mr. Bischoff would like to continue to be involved in his pizza business even though it is expected that because of his felony conviction he will have great difficulty in obtaining any further bank financing or, naturally, any SBA loans. His ability to attract potential investors or partners again will also be hindered by his felony conviction, his shame, and the publicity surrounding this case.

*Medical Condition*

Medically, Mr. Bischoff has been challenged. His medical condition is well documented. He came to counsel like a deer in headlights, mentally in a fog, and morbidly obese, inter alia, with four large hernias, a renal cyst, and gallstones which were removed in July, 2021. He is much better now. He is more alert and energetic and he has lost 60 pounds. Having had gallbladder surgery, he is continuing to recover. Mr. Bischoff is looking forward to his now scheduled hernia surgery by Dr. McIntosh on November 10, 2021 at Troy Beaumont Hospital, where his 4 large hernias will be removed and mesh installed. [6]

Mr. Bischoff is a Covid-19 survivor, having contracted the virus in March of 2020. It is believed that once his recovery is complete from the latest surgery, he

---

[6] Rather than delaying sentence any further, counsel, the government, and the Court have agreed to the actual delay of the imposition of sentence until Mr. Bischoff sufficiently recovers from the surgical procedure.

will not need significant medical care.  This surgery is expected to last 3 to 4 hours and will include the installation of new wire mesh to hold in protruding parts in place.  The recovery time will be disclosed by his surgeon once the surgery is complete.

## 18 USC § 3553(a)(3) and (4): Kinds of Sentences Available and the Sentencing Range Established By the Federal Sentencing Guidelines

Mr. Bischoff's advisory sentencing guideline range has been calculated at level 20 Category III, 41 – 51 months.  Defendant is asking for a variance.  There is no statutory mandatory minimum term of incarceration in this case; therefore, if this Honorable Court finds it appropriate, it may impose a sentence that does not require lengthy incarceration.

## 18 USC § 3553(a)(5): Any Pertinent Policy Statement Issued by the Sentencing Commission

Counsel is not aware of any relevant policy statements.

## 18 USC § 3553(a)(6): The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct

There are no codefendants in this matter.  There is a similar case involving a defendant with much higher guidelines being granted a variance based upon which are believed to be extraordinary efforts to pay restitution.  U.S. vs Kenneth Alan Flaska, Case No. 14-cr-20131.  Counsel has liberally adopted arguments made therein.  This is a case where the guidelines were at 87 – 108 and reduced to 64 months.

**18 USC § 3553(a)(7): The Need to Provide Restitution to Any Victims**

Counsel adopts arguments already made herein that restitution has been made in full within a short period of time.

## V. CONCLUSION

"The makers of the sentencing guidelines have succeeded only in contributing to the making of law of punishment that shows obstinately little concern for the personhood of offenders . . . a law that tends to treat offenders as something closer to animals than humans, and that has correspondingly sought, more and more frequently, simply to lock them away."  See James Q. Whitman, <u>Harsh Justice</u>, Oxford Press, 2003 at 223 note 72.  Mr. Bischoff requests the Court consider a downward variance from sentencing ranges of 41 to 51 months to Zone B, with sentencing ranges of 8 to 14 months.

Respectfully Submitted,

JAMES C. THOMAS, P.C.

By: <u>/S/ James C. Thomas</u>
James C. Thomas (P23801)
Counsel for Defendant
12900 Hall Road, Suite 350
Sterling Heights, MI 48313
jthomas@orlaw.com

DATED:  September 8, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2021, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, who will send notification of such filing to all parties of record.

 /s/ Alida Andrianos
Alida Andrianos

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

   **Plaintiff,**       **CASE NO. 20-CR-20556**

 **vs.**            **HON. PAUL D. BORMAN**

**MICHAEL BISCHOFF,**

   **Defendant.**

_____/

# EXHIBITS/ATTACHMENTS
# TO DEFENDANT'S SENTENCING
# MEMORANDUM

Thomas Scott
In Behalf
Passport Pizza Employees
54604 Iroquois Lane
Shelby Township, Michigan 48315
(248) 652-0000


August 30, 2021


Hon. Paul D. Borman
United States District Court
Eastern District of Michigan, Southern Division
231 West Lafayette Boulevard
Detroit, Michigan 48226

Re: United States of America v Michael Bischoff
United States District Court Case No. 2:20CR20556 - 001

Dear Judge Borman:

My name is Thomas Scott I have work with Michael Bischoff helping with Human resources and other parts of Mr. Bischoff businesses for many years.  I am writing to you at the request of myself and on behalf of 50 very different human beings who make a living from working for Passport Pizza and Michael Bischoff. To say we are very different is the best way to describe us as most of us would not be able to be employed if it were not for Mr. Bischoff. He has given most of us a second chance at having a life and making a living. Some people put labels on us, some people call us names, some people are blind to our existence. Some people think we were unemployable. Not Mr. Bischoff. We know, see and feel a sense of commitment to us and, in turn, we are committed to Mr. Bischoff. He is the one who helps us pay our utility bills when things get out of hand. He is the one who helps feed a birthday party by providing free pizzas to his employees. He is the one who steps in a helps change a tire when we get a flat, buys an oil change for us, asks about our children and our families and truly cares what happens to us. Some of us have only our jobs as security. When the times get difficult, Mr. Bischoff has paid for diapers and medication for our children, cleaning products for our homes, school supplies for our kids. His heart is big and his generosity even bigger. And his heart just does not extend to us but to our community as well. Local schools and churches receive support and free food. Local activities are supported and the homeless and hungry also receive a benefit from the food collection program.

Mr. Bischoff does not have to do any of this. But he does. He does because of the kindness of his heart and the caring for the people who represent his company to the public. Last year, Mr. Bischoff almost lost his business to the problems of Covid. It was Mr. Bischoff who acted to not let Covid ruin our company and ruin our lives. It was Mr. Bischoff who saved our jobs and kept us employed as a core group for Passport Pizza during the pandemic, even though we were not working full time. It was Mr. Bischoff who saved our company when he could have been forced to sell in a divorce proceeding that Mr. Bischoff neither wanted nor needed. Yet, despite being hounded by

problems on all sides, Mr. Bischoff stuck with us. We need you to know we are sticking with him. There is no fancy names in our pizza family, no fancy cars or fancy homes or fancy clothes. There is just a commitment to make the best pizza possible for the Detroit community. And we do. We are proud to work for Mr. Bischoff and proud of what he does for all of us. We are also concerned because Mr. Bischoff has not been himself and appears to carry a heavy burden each day throughout the day. We know he is ashamed. We know he is worried. We know he has great concerns and he has told us that he wants us to carry on.

We know that Mike is being sentenced for PPP fraud, we don't know all the details of this matter before you, however we were informed that he paid back every cent that he got improperly. What we want to convey is that there is a good side to the character of the man you will have standing before you. Words cannot convey the depth of our thanks for Mr. Bischoff and our unified and loud request is that he hopefully will be seen for much more than whatever report is given to you. While he is not perfect, he treats others in a perfect manner. We should not ask for anything more. But we do. In your sentencing if there is any way to keep him here for us, under some form of supervision, then we kindly request you make that happen. The captain of this ship is needed to keep sailing and we need our captain to lead us. Hopefully you will see the heart and soul of Mr. Bischoff and not just the actions which he engaged in to protect his company and all of us.

Myself and many of the employees of Mr.Bischoff would have love to come to court and speak in his behalf at his sentencing but because of covid we do not think it to be appropriate in respect to the court and others.

God grant you the wisdom to do justice and fairness in this and all matters.

Sincerely,

Thomas Scott on behalf of the 50

Law Office of
# JAMES C. BISHAI, JD, PLLC
*Attorney and Counselor at Law*

March 31, 2021

Hon. Paul D. Borman
United States District Court Judge
231 W. Lafayette Blvd., Room 717
Detroit, MI 48226

**RE:   Michael Bischoff**

Your Honor:

I am writing to you and your Court regarding the above-named Defendant, Michael Bischoff ("Mike"), who is a close friend and  a client, whom I have known for nearly 15 years.  I am one of a handful of attorneys who have represented Passport Pizza in a professional capacity.  I have found working with Mike is always a pleasure, as he is reasonable and cooperative in presenting his case factually to me, making my job easier and productive.

I first met Mike in 2006, when he helped me install my new phone system in my new office in Mt. Clemens.  Yes Mike worked on complex phone systems, besides being a pizza man.  Mike, in all the years that I have known him, and this is no cliché when I say this, but if I am stranded somewhere if my car breaks down, Mike is the first person that I call to help out.  Mike is a friend that I can count on, when a need arises.  I can't say that is the case for many other people that I know.  Although Mike won't act as if you owed him the favor back, but you did so anyway, because of the way that Mike treated your request in the first place.

Mr. Bischoff has been deeply affected by this situation that he is in.  It is embarrassing for him to request friends and colleagues to write a letter like this.  He's worked hard to come back as a business and succeeding, after it has been hampered by a lawsuit against his wife by a former employee which negatively impacted his business, the pandemic (for which he was infected with the virus early on in late March 2020), and further compounded by his lengthy divorce (which wasn't caused by this or the pandemic, but was a long time coming).  What happened is unfortunate, and it was wrong, and Mike knows this.  But in the meantime, Mike is working diligently with no excuse to bring the business through all of this.  He has a positive attitude with many including his employees.

Mike continues to be responsible in his daily affairs.  He's very much a 'Johnny on the spot' with the business.  He's like a jack of all trades with his business and the independent stores.  He may be the boss, but he's hands on, with all the tasks and responsibilities to keep things moving along.  He is essential to his business, and many depend on him.

Mike is resilient, and with his positive attitude in light of what has happened, will continue to move forward, which is beneficial to his company and the public.  There is no doubt in my mind that Mike

□ 7755 22 Mile Road, #182404 • Shelby Township, Michigan 48317-9992 • Main Telephone & Fax (888) 329-6585 • Tel. (586) 329-6756
□ 46880 Hayes Road • Macomb Township, Michigan 48044 • By Appointment Only
□ 45343 Market Street • Suite 200 • Shelby Township, Michigan 48315 • By Appointment Only
**Oakland County Office:**
□ 30600 Telegraph Road • Suite 4280 • Bingham Farms, Michigan 48025 • By Appointment Only
□ e-mail: attybishai@gmail.com

Law Office of
# JAMES C. BISHAI, JD, PLLC
*Attorney and Counselor at Law*

Hon. Paul D. Borman
March 31, 2021
Page Two


after this matter runs its course, has the ability  to contribute positively to society.  Why?, because he's always done it before, does it now, and will continue to do so.

Many people rely on and depend on Mike.  Any request that I make for leniency (meaning probation, restitution, and no imprisonment), is not made lightly, as if there are no victims or what Mike did was minimal.  Mike's ability to be rehabilitated and to be remorseful in light of what has been committed, and what has resulted in his life, is a certainty.  And, I make this prediction with certainty. Although I am one of many writing this correspondence to you, I hope that it will have some effect.

I thank you in advance, for taking the time to read this letter, and wish you the best in tempering justice in this case, which is always difficult.  Until then, I remain

Very truly yours,

*James Bishai*

James C. Bishai

□ 7755 22 Mile Road, #182404 • Shelby Township, Michigan 48317-9992 • Main Telephone & Fax (888) 329-6585 • Tel. (586) 329-6756
□ 46880 Hayes Road • Macomb Township, Michigan 48044 • By Appointment Only
□ 45343 Market Street • Suite 200 • Shelby Township, Michigan 48315 • By Appointment Only
**Oakland County Office:**
□ 30600 Telegraph Road • Suite 4280 • Bingham Farms, Michigan 48025 • By Appointment Only
□ e-mail:  attybishai@gmail.com



# Gateway To Glory Ministries, Inc.

**PO Box 863**

**Sterling Heights, MI 48311-0863**

**855-55GATEWAY (554-2839)**

March 27, 2021

Honorable Paul D. Borman
United States District Court Judge
231 West Lafayette Blvd, Room 717
Detroit, MI 48226

RE: Michael Bischoff

Honorable Paul D. Borman,

This letter is to request leniency in the case of Michael Bischoff.

My name is Steve Malek, my wife and I are the Chaplains of the Macomb County Jail and the founders of Gateway To Glory Ministries, a jail/prison ministry with aftercare homes. Gateway's homes are structured, sober living environments that help men and women transition slowly back into the community.

I have known Michael Bischoff for 7 years. He has been very instrumental in helping several of the residents, who are involved in the aftercare program, by providing employment to them. His care and compassion for ex-offenders is exhibited through hiring those who have had trouble finding employment. He has also provided food to the men and women in order to help them out.

I believe in my friend, Michael. Through his interaction with the Gateway ministry, he has shown that he has great potential to lead a constructive and productive life. His empathy to those less fortunate leads me to believe he will continue to contribute positively to society.

Sincerely,

Steven Malek
16140 Royal Park Dr S
Fraser, MI 48026
586-883-3392

"Because narrow is the gate and difficult is the way which leads to life, and there are few who find it"
Matthew 7:14

**Saint Anthony the Great Romanian Orthodox Monastery**
**9820 Cudell Ave., Cleveland, OHIO 44102**
**216.856.6626,**
**7568 Hudson Ave., Warren, MI 48091**
**313.319.7370**
stanthonymonastery@gmail.com

To Whom It May Concern,

I have known Michael Bischoff 20 years. He is an upstanding citizen and has always been there for our church, Saint Anthony the Great Orthodox Monastery, an Internal Revenue Registered 501 C 3 corporation founded in 1983. See Ex A, IRS registration, EIN 34-1439855, with offices on Cleveland, Ohio and Warren Michigan and registered in both states.

Mike has always been one to help with church expenses in times of need, he has refer people to us for emergency and low cost housing and donate tens of thousands of Dollars in food from his restaurants and local food Pantry (Harvest Time Ministry) that his X-Wife and him has much involvement in and distributed to homeless in Michigan and Ohio.

Mike also has given many people jobs from our ministry. Many of the people that he has given jobs were just releases from jail or had prior Drug addiction issues or were living and the street. Many of the people we sent to his company for a job did not out a few had stolen money or inventory and in one case robbed the business after hours, but he continued to give others a chance when most business owners would not be bothered.

Mike came to us with Heavy Heart embarrass to even asked for this letter and I could tell he was remorseful for his actions. He made no excesses or blamed the government for what he had done unlike others that I have seen come through our Ministry.

Any consideration that you give him in leniency would be greatly appreciated as I find it difficult to fathom that Michael would have had the *mens rea* to commit this crime.

Deacon
Albert Thrower MBA  — Pastor
Registered Minister State of Ohio



**ADVISORY BOARD**

Government
Robert Binson
Mayor
Center Line

Thomas Bommarito
Economic Development
Director
City of Warren

John Chmura
Judge
37th District Court

Business Board
Mark Abraham
President
Vandco

David Bommarito
President
The Bonelle Group

Dennis Bostick
President
Universal Mill

Richard Casinelli, CPA
Maria and Barnes
M&B Advisors

Jeff Dinsmore
President
Elect RX

Stephen Kado
President
JARS

Marvin Karana
President
Karana Law

Ross Lewicki
President
Highway Auto Parts

Hank Luks
President
Controlled Security Systems

Terry Niles
President
Vonita

Lou Peters
Senior Vice President
Superior National Bank

John Pilot
President
Thermalpure Heating
Cooling

Charles Reinhold
President
CPA Investments

Jim Sajol
Owner
Sajol's Restaurant
Banquet

Jim Sape
President
Unique Office Lending

Peter Thomas
President
Cash Exchange

Stevros Toma
President
M97 Investments

Peter Whitaker
President
Huron Wholesale Supply

Scott Zemens
President
Re/Max First

STAFF:
John Johnson, CEO
Robert Boccomino
Marketing & Special Projects
Enchantillon Marketing
Scott Joy II
Donna Weatherby, Marketing
& Special Project
Fred Wolf
Marketing / Chamber Connect
Program Specialist

59 Walnut Ave., Ste. 206, Mount Clemens, MI 48043 * M-586-214-9116 * O-586-610-8452 Website: semchamber.org

To Whom It May Concern,

I write this letter of reference on behalf of Michael Bischoff.

I am the CEO of the Southeast Michigan Chamber of Commerce and its two affiliates the Gratiot Avenue Chamber of Commerce Macomb as well as the Warren Area Chamber of Commerce. Additionally in that role I am the board chair for our two nonprofit affiliate's the North Gratiot Cruise Foundation and the Warren Community Foundation. I also am the board chair for Macomb County's lead Homeless support organization MCREST, Macomb County Rotating Emergency Shelter Team.

As a result of those various roles, I have had numerous occasions through the years to work with Mr. Bischoff and his business Passport Pizza with supporting numerous events and initiatives relative to those organizations.

Mike has been a consistent supporter of our various projects both financially and providing food and food services. Mike is person I found that I could rely on over the years to always be there to the extent of his resources.

Finally, I have found Mike to be a good-hearted soul that really cares about helping people.

We need more committed businesspeople like Mike that understand the need to support the community and the lives of our Brothers and Sisters.

If you would like to discuss this matter in greater detail please do not hesitate to contact me.

John Johnson, CEO
Southeast Michigan Chamber of Commerce
Gratiot Avenue Chamber of Commerce Macomb
Warren Area Chamber of Commerce





**CHARLES T. MISSIG**
16884 Kenneth
Macomb MI  48044
(586) 219-0442

March 18, 2021

Honorable Paul D. Borman
United States District Court Judge
231 W. Lafayette Blvd., Room 717
Detroit, MI  48226

Re:  Michael Bischoff

Your Honor,

My name is Charles T. Missig, and I am a retired Macomb County Deputy Sheriff.  I am actively involved with Families Against Narcotics, an organization that helps place those struggling with addiction into detox and rehab facilities.  I also work as a paraprofessional at Neil Reid High School, where I work with emotionally impaired students.

I have known Michael Bischoff since 2nd grade at Alan B. Shepard Elementary in Warren, and remember when Mike opened up his first pizzeria, and have always known Mike to be an incredibly hard worker.  Throughout the years, Mike has always been generous to those in need, and has probably donated thousands of pizzas over the years.  He has been honored locally for his charitable work over the years and has been a big supporter of Gateway To Glory, which ministers to the inmates in the Macomb County Jail.  Mike has also always supported me in my various political endeavors, and I cannot thank him enough for that.

I will say that I am extremely disappointed in this current situation involving fraudulent activity, and recently had a lengthy conversation with Mike in regard to this incident.  Mike is remorseful for what he has done and is ready to face the consequences for his actions.  I can honestly say that I am confident that Mike will once again contribute positively to society once he has completed whatever sentence you impose.

I am certainly willing to discuss anything else as it relates to Mike, and my friendship with him.

Sincerely

Charles T. Missig